[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 11-13708

_____

D.C. Docket No. 2:08-cv-02106-VEH

MARIO JARMON,

Plaintiff-Appellee,

versus

VINSON GUARD SERVICES, INC.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

(August 30, 2012)

Before JORDAN and HILL, Circuit Judges, and EDENFIELD,* District Judge.

PER CURIAM:

_____

* Honorable B. Avant Edenfield, United States District Judge for the Southern District of
Georgia, sitting by designation.

Mario Jarmon sued his former employer, Vinson Guard Services, Inc., asserting a claim under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.*, as well as state law claims for conversion and breach of contract.[1] Mr. Jarmon alleged that Vinson violated § 207 of the FLSA by willfully failing to pay him overtime wages throughout his employment. The case proceeded to trial on the FLSA claim, but at the close of Vinson's case, the district court granted Mr. Jarmon's motion for judgment as a matter of law as to liability and instructed the jury to determine only the issue of damages. The jury awarded Mr. Jarmon $1,110.00 in damages, a sum the district court doubled pursuant to § 216(b) of the FLSA.

The issue is whether the district court erred in granting Mr. Jarmon's motion for judgment as a matter of law as to Vinson's liability. Following oral argument, and a review of the record and the relevant authorities, we conclude that the district court improperly took the issue of Vinson's liability away from the jury. Accordingly, we reverse and remand the case for a new trial.

**I**

We review *de novo* a district court's grant of judgment as a matter of law under Federal Rule of Civil Procedure 50, applying the same legal standard as the district

---

[1] The district court granted Vinson's motion for summary judgment as to the conversion and breach of contract claims, leaving only the FLSA claim.

court. *See Pickett v. Tyson Fresh Meats, Inc.*, 420 F.3d 1272, 1278 (11th Cir. 2005). Under Rule 50, a court should grant a motion for judgment as a matter of law when there is no legally sufficient basis for a reasonable jury to find against that party on that issue. *See id*. A court should deny such a motion, however, if there is a substantial conflict in the evidence, "such that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions[.]" *Christopher v. Florida*, 449 F.3d 1360, 1364 (11th Cir. 2006) (internal quotation marks omitted). We review all the evidence in the record and draw all reasonable inferences in favor of the nonmovant. *See Cleveland v. Home Shopping Network, Inc.*, 369 F.3d 1189, 1192-93 (11th Cir. 2004). "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'" *Id*. at 1193 (quoting *Reeves v. Sanderson Plumbing Prods. Inc.*, 530 U.S. 133, 150 (2000)).

## II

Because we write only for the parties, we assume their familiarity with the underlying facts, and only summarize those necessary to resolve this case.

On March 9, 2008, Mr. Jarmon began working for Vinson as a field supervisor. Mr. Jarmon remained in that position until October 22, 2008, when he was demoted from field supervisor to security guard. On November 6, 2008, Mr. Jarmon stopped

3

working for Vinson, and he subsequently filed suit.

## III

In granting Mr. Jarmon's motion for judgment as a matter of law, the district court stated:

> I'm going to grant the plaintiff's motion for partial judgment as a matter of law as to liability. I will send to the jury the issue of damages and the issue of willfulness. . . . [N]o reasonable jury can find that there wasn't some overtime that was not paid . . . by the defendant to the plaintiff during the time period, October 5 to 11, [2008].

D.E. 113 at 472-73. The district court later instructed the jury that it had determined that Mr. Jarmon had proved that Vinson did not pay him the overtime wages required by law.[2] The district court also instructed the jury that Vinson had admitted to not paying Mr. Jarmon for 7.5 hours of overtime he worked on October 7, 2008. *See* D.E. 113 at 551. In our view, the district court erred in granting Mr. Jarmon's Rule 50 motion.

The FLSA provides that overtime wages must be determined by a given workweek. *See* 29 U.S.C. § 207(a). Although Greg Carter, Vinson's corporate representative, admitted that Vinson did not pay Mr. Jarmon overtime wages for work performed on October 7, 2008, *see* D.E. 112 at 369-71, that admission—as we explain

---

[2] "I have determined that the plaintiff has proved that he worked overtime hours without adequate compensation. It is up to you, however, to determine how much overtime the plaintiff worked without adequate compensation." D.E. 113 at 545.

4

below—was insufficient to determine as a matter of law that Vinson violated the FLSA.

The relevant time period is the workweek, not any given day, and Mr. Carter testified that, even though Vinson did not pay Mr. Jarmon for October 7, it nevertheless overpaid him for the week of October 5 to October 11. *See* D.E. 112 at 382-83; D.E. 113 at 396. For example, Mr. Carter—referring to Exhibit 13 at Vinson 0215, the payroll timekeeping sheet for the week of October 5-11, 2008—explained that Mr. Jarmon worked a total of 47 hours from October 6 to October 11, but was paid for 54 hours of work (40 straight time hours and 14 overtime hours). *See* D.E. 112 at 368 (Oct. 6), 369-71 (Oct. 7), 371-75 (Oct. 8), 375-78 (Oct. 9), 379-80 (Oct. 10), and 382 (Oct. 11). Thus, the evidence viewed in the light most favorable to Vinson would have permitted the jury to find that Vinson overpaid Mr. Jarmon by 7 hours for the time period from October 6 to October 11.

That leaves October 5. With respect to that day, Vinson's personnel schedule indicated that Mr. Jarmon was not scheduled to work, *see* Exh. 13 at 1, and Mr. Carter testified that he did not know how many hours Mr. Jarmon had worked that day, as his time entries were incomplete. *See* D.E. 112 at 363-66; D.E. at 391. Mr. Jarmon, for his part, testified that he worked 9 hours on October 5. *See* D.E. 112 at 252-55. Thus, had the jury credited Vinson's evidence for the period from October 6 to

October 11, and credited Mr. Jarmon's testimony for October 5, Mr. Jarmon would have worked 56 hours while only being paid for 54.

The problem, for Rule 50 purposes, is that Mr. Jarmon's credibility (in general, and specifically with respect to October 5) was for the jury, particularly in light of the fact that Mr. Jarmon previously had said that he did not know how much he was underpaid by Vinson. *See* D.E. 112 at 277-82. Credibility determinations and the weighing of evidence are jury functions, *see Cleveland*, 369 F.3d at 1193, and the jury should have been allowed to decide whether it believed Mr. Jarmon's version of events. *See Etienne v. Inter-County Sec. Corp.*, 173 F.3d 1372, 1374 (11th Cir. 1999) ("The evidence was essentially a credibility determination, with the exception of the $18.62 the defendant admitted to owing, and the credibility of the witnesses was the province of the jury.").[3] Nothing in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946) or its progeny requires a jury to accept a plaintiff's version of events when an employer has kept inadequate records. *See Kuebel v. Black & Decker, Inc.*, 643 F.3d 352, 364-65 (2d Cir. 2011) ("The [*Mt. Clemens*] test simply addresses whether there is a reasonable basis for calculating damages, assuming that a violation has been

---

[3]  In *Etienne* we concluded that the district court erred in denying a motion for judgment as a matter of law as to the $18.62 the defendant admitted to owing because of an error by the payroll company. Vinson, in contrast, has not admitted that it owes Mr. Jarmon any money. Rather, Vinson has submitted evidence indicating that although Mr. Vinson was not paid wages for a certain day, he is not owed any further wages because he was still overpaid for the workweek.

6

shown."). Rather, the burden merely shifts to the employer to come forward with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. As explained above, Vinson did enough to get to a jury.

Stated differently, although Mr. Jarmon received the benefit of a jury instruction in accordance with *Mt. Clemens*, that did not mean that he was entitled to judgment as a matter of law as to Vinson's liability. In *Mt. Clemens*, the Supreme Court held that where the employer's records are inaccurate or inadequate, the employee has the burden to prove by way of just and reasonable inference that he in fact performed work for which he was improperly compensated. *See id*. at 687. Once the employee has met his burden, the burden then shifts to the employer to come forward with evidence of the precise amount of work performed or with evidence to negate the reasonableness of the inference to be drawn from the employee's evidence. *See id*. at 687-88. As we have said, Vinson presented the testimony of Mr. Carter, its corporate representative, that Mr. Jarmon was not underpaid for the week of October 5-11, 2008. As a result, Vinson presented sufficient evidence to negate the reasonableness of Mr. Jarmon's testimony and create a jury question on liability.

In sum, the district court erred in granting Mr. Jarmon's motion for judgment as a matter of law on liability, and Mr. Jarmon's motion for attorneys' fees and costs.

**IV**

The district court's judgment as a matter of law on liability is reversed, as is the district court's award of attorney's fees and costs to Mr. Jarmon. The case is remanded for a new trial. In light of this disposition, we need not and do not address any of the other issues raised by Vinson.

**REVERSED AND REMANDED.**